# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JORDAN ROSENBLATT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Case No. _____ ) |
| v. | ) CLASS ACTION ) |
| COTIVITI HOLDINGS, INC., DAVID SWIFT, J. DOUGLAS WILLIAMS, ELIZABETH CONNOLLY ALEXANDER, MALA ANAND, KENNETH GOULET, RUBEN J. KING-SHAW, JR., JOHN MALDONADO, JAMES PARISI, CHRISTOPHER PIKE, and HALSEY WISE, | ) JURY TRIAL DEMANDED ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on June 19, 2018 (the "Proposed Transaction"), pursuant to which Cotiviti Holdings, Inc. ("Cotiviti" or the "Company") will be acquired by Verscend Technologies, Inc. ("Parent") and its wholly-owned subsidiary, Rey Merger Sub, Inc. ("Merger Sub," and together with Parent, "Verscend").

2. On June 19, 2018, Cotiviti's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Verscend. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Cotiviti's shareholders and completed, Cotiviti's stockholders will

receive $44.75 in cash for each share of Cotiviti common stock they own. The special stockholder meeting at which Cotiviti's stockholders will vote on the Proposed Transaction is set for August 24, 2018.

3. On July 23, 2018, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Cotiviti common stock.

9. Defendant Cotiviti is a Delaware corporation and maintains its principal executive offices at One Glenlake Parkway, Suite 1400, Atlanta, Georgia 30328. Cotiviti's common stock is traded on the NYSE under the ticker symbol "COTV." Cotiviti is a party to the Merger Agreement.

10. Defendant David Swift ("Swift") is the Chairman of the Board of Cotiviti.

11. Defendant J. Douglas Williams ("Williams") is a director and the Chief Executive Officer ("CEO") of Cotiviti.

12. Defendant Elizabeth Connolly Alexander ("Alexander") is a director of Cotiviti.

13. Defendant Mala Anand ("Anand") is a director of Cotiviti.

14. Defendant Kenneth Goulet ("Goulet") is a director of Cotiviti.

15. Defendant Ruben J. King-Shaw, Jr. ("King-Shaw") is a director of Cotiviti.

16. Defendant John Maldonado ("Maldonado") is a director of Cotiviti.

17. Defendant James Parisi ("Parisi") is a director of Cotiviti.

18. Defendant Christopher Pike ("Pike") is a director of Cotiviti.

19. Defendant Halsey Wise ("Wise") is a director of Cotiviti.

20. The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Cotiviti (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of June

15, 2018, there were 93,220,352 shares of Cotiviti common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

28. Cotiviti is a leading provider of analytics-driven payment accuracy and spend management solutions, focused primarily on the healthcare sector, which comprised 89% of the

Company's revenue in 2017. The Company's integrated solutions help clients enhance payment accuracy in an increasingly complex healthcare environment. Cotiviti leverages its robust technology platform, configurable analytics, proprietary information assets, and expertise in healthcare reimbursement to help its clients enhance their claims payment accuracy. The Company helps its healthcare clients identify and correct payment inaccuracies, which resulted in approximately $3.4 billion in savings in 2017. Cotiviti works with over 60 healthcare organizations, including a majority of the 25 largest U.S. commercial, Medicare, and Medicaid managed health plans, as well as Centers for Medicare and Medicaid Services, the United States federal agency that administers Medicare and Medicaid.

29. The Company is also a leading provider of payment accuracy solutions to approximately 30 retail clients, which comprised 11% of the Company's revenue in 2017, including a majority of the ten largest retailers in the United States. Cotiviti works with retail clients in the United States, Canada, and the United Kingdom to realize their negotiated allowances, concessions, rebates, and other incentives associated with merchandise procurement, logistics, and other service transactions. In 2017, Cotiviti generated over $550 million in savings for its retail clients.

30. Cotiviti was formed in May 2014 through the merger of Connolly Superholdings, Inc., a leader in retrospective payment accuracy solutions for the healthcare and retail sectors, and iHealth Technologies, Inc., a leader in prospective payment accuracy solutions for the healthcare sector. Through that merger, the Company significantly broadened its suite of payment accuracy solutions, expanded its client base, enhanced its subject matter expertise, and positioned itself for significant growth opportunities.

31. On June 19, 2018, the Individual Defendants caused the Company to enter into

the Merger Agreement with Verscend.

32. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Cotiviti's shareholders and completed, Cotiviti's stockholders will receive $44.75 in cash for each share of the Cotiviti common stock they own.

33. The special stockholder meeting at which Cotiviti's stockholders will vote on the Proposed Transaction is set for August 24, 2018. The Merger Agreement provides that, upon the terms and subject to the satisfaction or waiver of the conditions set forth therein, Merger Sub will merge with and into Cotiviti, with Cotiviti continuing as the surviving corporation and a wholly owned subsidiary of Parent.

34. According to the press release announcing the Proposed Transaction:

Cotiviti Holdings, Inc. (NYSE: COTV) ("Cotiviti"), a leading provider of payment accuracy and analytics-driven solutions focused primarily on the healthcare industry, and Verscend Technologies, Inc. ("Verscend"), a portfolio company of Veritas Capital ("Veritas") and a leader in data-driven healthcare solutions, announced today that they have entered into a definitive agreement whereby Verscend has agreed to acquire Cotiviti for $4.9 billion in cash.

Under the terms of the agreement, Cotiviti shareholders will receive $44.75 in cash per share of Cotiviti common stock, and Verscend will assume all of Cotiviti's outstanding debt, resulting in an enterprise value of approximately $4.9 billion. The offer price represents a 32% premium to Cotiviti's unaffected share price as of June 4, 2018 and a 136% premium to the initial public offering price of Cotiviti's common stock.

The combined business will operate as a private healthcare information technology company with unique, data-driven capabilities. Together, the companies are expected to have greater impact in the healthcare IT market by increasing affordability, reducing waste and improving outcomes and quality as well as offer new opportunities to create substantial value for clients, including complementary solutions across multiple intervention points in the payment process. . . .

Transaction Details

The transaction, which was unanimously approved by Cotiviti's Board of Directors, is expected to close during the fourth quarter of 2018. Closing of the

transaction is subject to the approval of Cotiviti shareholders and the satisfaction of customary closing conditions, including applicable regulatory approvals.

Advent International has entered into a voting agreement whereby it has agreed to vote shares representing approximately 44% of the Company's voting power in favor of the transaction.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

35. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

36. The Proxy Statement omits material information regarding the Company's financial projections, as well as the valuation analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Goldman Sachs & Co. LLC ("Goldman Sachs") and William Blair & Company, L.L.C. ("William Blair").

37. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

*The Company's Financial Forecasts*

38. Defendants failed to disclose certain financial projections of Cotiviti, despite the fact that Goldman Sachs and William Blair were provided with, and relied upon, those projections to perform their valuation analyses to support their respective "fairness opinions."

39. For example, according to the Proxy Statement, Goldman Sachs performed its

7

Illustrative Present Value of Future Share Price Analyses in the following manner: "Using the Company Forecasts, Goldman Sachs derived a range of theoretical future values per share of Common Stock as of December 31 of each year starting 2018 through 2021, by applying a range of illustrative multiples of share price / [earnings per share ('EPS')] for the next twelve-month period, which is referred to as 'NTM EPS,' of 18.0x to 22.0x to an estimate of the Company's **Adjusted EPS** for the following year, **as reflected in the Company Forecasts**." (Emphasis added). The Proxy Statement, however, only discloses the Company's projections of revenue, adjusted EBITDA, and free cash flow, and *not* the Company's projections of earnings or EPS, thus rendering the Proxy Statement misleading. This information is material because stockholders would want to know the Company's projections of earnings in deciding whether to approve the Proposed Transaction and be cashed out of the Company forever, or vote against the Proposed Transaction and remain stockholders in a standalone company.

40. Similarly misleading, according to the Proxy Statement, Goldman Sachs performed its Illustrative Discounted Cash Flow Analyses by, among other things, discounting to present value "the estimates of the **unlevered free cash flow** to be generated by the Company for the period from April 1, 2018 to December 31, 2022, **as reflected in the Company Forecasts**." (Emphasis added). In the same section of the Proxy Statement describing Goldman Sachs' Illustrative Discounted Cash Flow Analyses, the Proxy Statement indicates that, "[f]or purposes of this analysis, unlevered free cash flow was defined as Adjusted EBITDA (i) less stock-based compensation expense, depreciation and amortization, (ii) less taxes (applying a 22.5% cash tax rate assumption as provided by the Company to the calculated amount thus far), (iii) plus depreciation and amortization, (iv) less capital expenditures, and (v) adjusted for changes in net working capital."

41. But in the section of the Proxy Statement describing the Company's financial forecasts, the Proxy Statement discloses the Company's projections of "free cash flow" (rather than "**unlevered** free cash flow," as used by Goldman Sachs in its analysis). Moreover, the Proxy Statement defines "free cash flow" as "Adjusted EBITDA less cash taxes, interest expense and capital expenditure," and indicates that the projections assume a tax rate of 25%, thus differing from the definition and calculation of unlevered free cash flow used by Goldman Sachs.

42. The Proxy Statement therefore is misleading in that it wrongfully leads stockholders to believe that the free cash flow projections disclosed in the Proxy Statement were the cash flows that were used by Goldman Sachs to perform its Illustrative Discounted Cash Flow Analyses. The failure to disclose the unlevered free cash flows used by Goldman Sachs in its analysis is material because those cash flows are a key input in the discounted cash flow analysis, which is widely-recognized as the preeminent valuation methodology for valuing companies.

43. Relatedly, the Proxy Statement discloses certain projections of Cotiviti for non-GAAP (generally accepted accounting principles) metrics that purportedly were used by Goldman Sachs and William Blair to perform their valuation analyses in connection with the Proposed Transaction. Specifically, the Proxy Statement discloses non-GAAP projections of adjusted EBITDA and free cash flow. The Proxy Statement, however, fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

44. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a

reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Proxy Statement that "[n]on-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by the Company may not be comparable to similarly titled measures used by other companies."

45. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Fairness Opinion of Cotiviti's Financial Advisor: Goldman Sachs & Co. LLC; (ii) Fairness Opinion of Cotiviti's Financial Advisor: William Blair & Company, L.L.C.; and (iii) Certain Financial Forecasts.

*Goldman Sachs' Valuation Analyses*

46. With respect to Goldman Sachs' Illustrative Present Value of Future Share Price Analyses, the Proxy Statement fails to disclose: (i) the Company's projected adjusted EPS used by Goldman Sachs in its analysis; (ii) the specific inputs and assumptions Goldman Sachs relied upon to derive its selected NTM EPS multiples of 18.0x to 22.0x; and (iii) the specific numerical inputs and assumptions underlying the discount rate of 8.5% used by Goldman Sachs. The failure to disclose this information was a material omission and renders the Proxy Statement materially misleading by wrongly implying that Goldman Sachs' analysis supports the fairness of the merger consideration.

47. With respect to Goldman Sachs' Illustrative Discounted Cash Flow Analyses, the Proxy Statement fails to disclose: (i) the Company's unlevered free cash flow projections for years 2018 through 2022, as well as the line item projections used to calculate the unlevered free

cash flows; and (ii) the specific numerical inputs and assumptions underlying the discount rates range of 8.0% to 9.0% selected by Goldman Sachs. The failure to disclose this information was a material omission and renders the Proxy Statement materially misleading by wrongly implying that Goldman Sachs' analysis supports the fairness of the merger consideration.

48. With respect to Goldman Sachs' Premia Paid Analysis, the Proxy Statement fails to disclose the individual premia for each of the transactions observed by Goldman Sachs in its analysis or, at the very least, the number of transactions observed in the analysis, as well as the low, median, mean, and high premia of the transactions observed broken down by year. Without this material information, stockholders cannot make an informed decision about whether the premia reference range selected by Goldman Sachs is truly representative of the selected transactions' premia. The failure to disclose this information therefore is a material omission and renders the Proxy Statement materially misleading by wrongly implying that Goldman Sachs' analysis supports the fairness of the merger consideration.

49. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Fairness Opinion of Cotiviti's Financial Advisor: Goldman Sachs & Co. LLC; (ii) Fairness Opinion of Cotiviti's Financial Advisor: William Blair & Company, L.L.C.; and (iii) Certain Financial Forecasts.

*William Blair's Valuation Analyses*

50. With respect to William Blair's Selected Public Company Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies observed by William Blair in its analysis. The omission of this information is material because William Blair did not perform a typical comparable company analysis by

selecting a range of trading multiples based on the selected companies, and then applying the selected trading multiples to the target's relevant financial statistics to generate implied values of the target company. Instead, William Blair merely compared the median, mean, low, and high financial data of the selected "peer" companies to Cotiviti's implied transaction multiples, thus defeating the purpose of the analysis. The failure to disclose the individual multiples and financial metrics of the selected companies (as was done with respect to William Blair's Selected Precedent Transactions Analysis) therefore was a material omission and renders the Proxy Statement materially misleading by wrongly implying that William Blair's analysis supports the fairness of the merger consideration.

51. With respect to William Blair's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the Company's free cash flow projections for years 2018 through 2022, as well as the line item projections used to calculate the free cash flows; and (ii) the specific numerical inputs and assumptions underlying the discount rates range of 9.0% to 11.0% selected by William Blair. This information is particularly necessary here in light of defendants' description of Goldman Sachs' Illustrative Discounted Cash Flow Analyses, which used the Company's *unlevered* free cash flows (rather than free cash flows used by William Blair) and discount rates of 8.0% to 9.0% (which are wholly below those selected by William Blair). Stockholders are entitled to understand whether the financial advisors used similar inputs and, if not (which appears likely), then stockholders are entitled to understand what inputs the financial advisors used and their respective bases for using those inputs. The failure to disclose this information therefore is a material omission and renders the Proxy Statement materially misleading by wrongly implying that William Blair's analysis supports the fairness of the merger consideration.

52. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Fairness Opinion of Cotiviti's Financial Advisor: Goldman Sachs & Co. LLC; (ii) Fairness Opinion of Cotiviti's Financial Advisor: William Blair & Company, L.L.C.; and (iii) Certain Financial Forecasts.

*The Background Leading to the Proposed Transaction*

53. The Proxy Statement omits material information relating to the background leading to the Proposed Transaction. Cotiviti's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

54. The Proxy Statement states that, during the sales process, Cotiviti entered into confidentiality agreements with numerous interested parties, but defendants failed to disclose the terms of the confidentiality agreements, including whether they contain standstill and/or "don't ask, don't waive" provisions that prevent the counterparties from acquiring the Company's stock or requesting a waiver of the standstill provision. Notably, it is likely that such provisions do exist because the Proxy Statement indicates that "Party D would not agree to customary provisions of the confidentiality agreement, including a 'standstill' provision."

55. If the confidentiality agreements do contain a standstill and "don't ask, don't waive" provision, the Proxy Statement is misleading in that it leads stockholders to believe that the interested parties are free to submit a superior offer to acquire Cotiviti. Stockholders would find this information material in deciding whether the Proposed Transaction with Parent is the best transaction that the Board could have obtained.

56. Further, the Proxy Statement fails to disclose whether the Board considered the

potential conflicts of interest of Goldman Sachs and William Blair specifically as it relates to the financial advisors' engagement by Parent in connection with its pending acquisition of GE Healthcare's Value-Based Care Division announced in April 2018, and, if so, the nature and substance of those discussions and the Board's basis for determining no conflict of interest existed (assuming the Board made such a determination). The disclosure of this information is important because Goldman Sachs' and William Blair's simultaneous representations of Parent and Cotiviti gives rise to disabling conflicts of interest that may have steered the process in Parent's favor and caused the financial advisors to manipulate their valuation analyses to make the merger consideration appear fair to ensure that the Proposed Transaction is approved by Cotiviti's stockholders. Moreover, Goldman Sachs' conflict of interest is exacerbated in light of the substantial amount of services it provided to Parent in the past two years, earning Goldman Sachs approximately $39.9 million in compensation from Parent, compared to the services Goldman Sachs provided to Cotiviti in the past two years, earning it approximately $1.7 million in compensation. Without this information, the Proxy Statement is misleading because it states that the Board considered potential conflicts of interest of Goldman Sachs and William Blair in connection with their engagement, but it provides no details regarding what potential conflicts the Board considered.

57. The Proxy Statement indicates that, in connection with the Proposed Transaction, the Board approved a cash retainer of $22,500 to be paid in a lump sum to Wise, the Chairman of the Strategy Committee. The Proxy Statement, however, fails to disclose any information relating to the Board's decision to award the Strategy Committee Chairman such fees, including the nature and timing of those discussions, as well as who proposed the payment. This information is material because such a payment could have incentivized Wise to steer the

negotiations in a particular direction and approve the Proposed Transaction when he otherwise may not have done so without such a payment. Without this information, the Proxy Statement is misleading because it states that Wise was independent and did not suffer from a conflict of interest. Stockholders, moreover, are entitled to this information regardless of whether the payment created an actual conflict of interest on the part of Wise.

58. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Fairness Opinion of Cotiviti's Financial Advisor: Goldman Sachs & Co. LLC; (iii) Fairness Opinion of Cotiviti's Financial Advisor: William Blair & Company, L.L.C.; and (iv) Interests of the Directors and Executive Officers of Cotiviti in the Merger.

59. The omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Cotiviti**

60. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Cotiviti is liable as the issuer of these statements.

62. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the

Proxy Statement.

63. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

64. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

65. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

66. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

67. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

68. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

69. The Individual Defendants acted as controlling persons of Cotiviti within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Cotiviti and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various

16

statements that plaintiff contends are false and misleading.

70. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

71. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

72. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

73. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

  B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

  C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

  D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

  E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  August 1, 2018    **RIGRODSKY & LONG, P.A.**

           By: */s/ Gina M. Serra*
             Brian D. Long (#4347)
**OF COUNSEL:**        Gina M. Serra (#5387)
             300 Delaware Avenue, Suite 1220
**RM LAW, P.C.**        Wilmington, DE 19801
Richard A. Maniskas      Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300  Facsimile: (302) 654-7530
Berwyn, PA 19312       Email: bdl@rl-legal.com
Telephone: (484) 324-6800    Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com     *Attorneys for Plaintiff*